Appellant v. District of Columbia, A Municipal Corporation et al. Mr. Pons for the Appellant, Mr. Shifley for the Appellees. May it please the Court, Billy L. Pons, on behalf of the Appellant in this case. The first issue I'd like to address is the issue concerning the trial court's exclusion of the introduction of the Sprint Bill. In this case, the Appellees filed a motion to exclude the introduction of the Sprint Bill. And in their motion, they capsulized the issue precisely that the Appellant wanted to introduce that evidence to show that from the time that Seton encountered the police, the law enforcement officers in the parking lot of the complex up until the time that he was shot, that the phone was engaged in a call. The Appellant then filed an opposition request in the court not to exclude that evidence. And in our motion in opposition, we also capulized that issue in terms of emphasizing to the court that we wanted to introduce this evidence to show that during the time of the encounter up until the time that Seton was shot, that the phone was engaged in the call. What would that actually have proved? Well, what it would have proved was that we had, there were two knowns from the Appellants. The Appellants had evidence from one of the officers that the deceit had a telephone mispossession when they first encountered him. There was also a witness for the Appellant who testified that he also had, he was on the telephone when he was first encountered by the police. And what we also knew was that, which was uncontested, was the cell phone was found inches from his body after he had fallen after he had been shot. That evidence would have proved, would have provided a bridge between these two islands. What I'm asking is, all the record is going to show you is that, put in an old-fashioned terms, the line was open. It isn't going to show whether he had the phone in his hand or whether it was in his pocket, only that it was on. Well, I... Which of us has not ever had a phone call made by or to us with a cell phone that was not in the hand of the person who had the call? In other words, your what, pocket call, there's a ruder name for it, but you know what I'm saying? I understand, Your Honor. I understand exactly how... I called somebody in Israel one time without meaning to. I understand, Your Honor. But I think what the evidence would have shown, it was more likely than not that during the pursuit, which was the key part, that the cell phone was still in his hands. And the central issue in this case was whether or not he had the cell phone in his hand or whether or not he had a gun. And the evidence, and when the court ruled to exclude that evidence, the court ruled that it was cumulative. The only thing that was cumulative was the fact was that, was the evidence that was uncontested, that he had the phone in his possession during the initial encounter and that the phone was found on his body. So when the court will found interest from his body, but when the court ruled it was cumulative, the court did not fully appreciate the probative value of that evidence to be able to fit that void where the appellant had no evidence in terms of what was in his hand at that time. So that evidence we were seeking to reduce that evidence, it showed more likely than not. And the court understood that because the court re-emphasized that court when he framed the issue during the pretrial conference, which is a part of our appendix in this case. What we submit to this court was that the trial court erred in excluding that evidence. It was a very close case. This was a contested trial, and there was evidence of the fact that he did have the phone in his possession, obviously, at the first encounter. And the phone was found near his body after he was shot. Additionally, there was no fingerprints. There was some fingerprints analysis that was attempted, but his fingerprints were not recovered from the weapon. Also from the videotape during the cross-examination of one of the officers, the officer who in fact had used the lethal force, was that there was some evidence that perhaps the BB gun had been planted because there was evidence showing that after the decedent had been shot, that there was an object coming out of the window. So it was a very close case. But what are we to make of the stipulation that didn't the district stipulate that the decedent was on the phone? And what was the exact terms of that stipulation? I believe the exact terms of the stipulation was that the decedent had the cell phone to his ear during the initial encounter. So that stipulation did not mitigate any of the prejudice that occurred to the appellant by not having that, be able to produce that evidence, will be able to introduce that evidence. So the stipulation did not in any way solve the issue in terms of the fact that whether or not Mr. Briscoe had, that the decedent had a BB gun or a cell phone in his time during the time of the pursuit. So you're drawing a distinction between the time of the initial encounter and subsequently of the time of the pursuit. Absolutely. And as to the latter, was there an objection made to the district, or an argument made to the district court that distinguished between these two temporal periods and said the reason we need to get the evidence in actually has to do with something that happened later on, not something that happened during the initial encounter? I would submit that was contained in our opposition to the appellee's motion to exclude the evidence, as well as the appellee's motion. And the court understood that we wanted to have this evidence to show that it was more likely than not that when he exited the complex after the two witnesses had seen him on the telephone, that the telephone was in his possession during the pursuit. The district court was very clear in understanding that point. There was no confusion. I think we would submit that the district court did not give it the proper weight in terms of the probative value of this evidence outweighing any prejudice to the appellee. And in fact... How is it, I guess to get back to Judge Sintel's earlier question, how is it probative that he still had the phone in his hand at the time that the shot was fired? Well, it's probative because in two parts. The officer who shot the decedent testified that the decedent had a gun in his hand. So it became very important to challenge that evidence, and this was the only way that we could have challenged the evidence, is by the cell phone records to establish that there was a call engaged, so the only item that he had in his hand was the same item that was seen in his hand before he exited the parking lot. I mean, there was a videotape in evidence, and the jury saw the videotape. The videotape depicts the moment that the decedent was shot, right? Yes, but what we submit is that the videotape was grainy. It was not exactly very clear. You could see an object in his hand, and the question was, what was that object? Was it the gun or was it a cell phone? So you don't dispute that just as a physical matter, it's possible that somebody could be on a call about the call, but the phone might still be in a pocket or somewhere outside of the individual's hand. I think it's a general notion I would agree with that. Yeah. You're just saying that you wanted the ability to make the best argument you could. Absolutely. We were lacking that, and that was very critical to our case because that was our theory, and it went to the central issue in the case. Did he have a BB gun, or did he have the BB gun that was found, or did he have the cell phone that he was last seen with? And your position is even if it's true that he could have had both, because that's definitely true as well, and he might well have still been on a call and still be holding a BB gun with the phone in the pocket, the evidence gives you the ability to argue that it's more likely that the phone rather than the BB gun was in his hand if the call was still going. Absolutely, and I believe the jury should have been able to hear that evidence to make the decision in terms of comparing those two types of evidence, the testimony of the officer as well as considering the Sprint bill. Also, we would submit that the court did not make findings that the probative value. What are we to make of the fact that, I guess, after this whole colloquy and back and forth with the district court, with the district court bringing the stipulation out of the defendants below that counsel for plaintiffs responded, we're fine, we're fine? We would submit that that response was just acknowledging the court's instruction. I think it's no different than Rogers when the lawyer said, okay, I think it's synonymous to that, because with the stipulation, the court, we submit that the court had already made a decision earlier in the pretrial conference to not admit it, and then there were some discussions during that portion whether or not if the officer, specifically one of the officers, Officer Torres, who had given prior testimony that the decedent had a cell phone in his hand in the parking lot. What the court did was the court allowed us to reopen the door in terms of the introduction of the bill if Officer Torres changed his testimony. Then the court was resolving some other issues. I believe it was one issue involving the forensic pathologist report as well as an issue concerning the funeral bill. Then the court came back, but we would submit when the court came back to address the issue in requesting, finding out whether or not the appellees would be willing to stipulate that the decedent had a cell phone in the parking lot, that was simply as a measure to prevent the appellant from later introducing it if Officer Torres contradicted his previous testimony. That stipulation did not address the issue in terms of whether or not during the pursuit from the time he left the parking lot until the time he was shot, whether or not he had the cell phone or a gun in his hand. It just reiterated the point in the parking lot, but it did not solve, that mitigation did not solve that void in terms of whether or not he had a BB gun or whether or not he had the cell phone during the pursuit. But after the counsel says we're fine, we're fine, there was no further exchange to the effect that we're fine, we're fine, but of course we still have an issue with respect not to the initial encounter, but with respect to the later events. Absolutely, and our objections was made through our opposition where we opposed. So when you say absolutely, was there or was there not that kind of follow-up? If the court can repeat the question. Yes, so after the counsel says we're fine, we're fine, as Judge Wilkins pointed out, was there a further colloquy clarifying that there's a distinction between we're fine with respect to the initial encounter, but we're not fine with respect to anything that happened afterwards, or was that left? My interpretation of the record looking at exactly that point with the response by counsel, I believe it was me when I said fine, it's fine, it's fine, it was addressing the stipulation with the understanding the court had already decided that, but the court was trying to fine-tune in terms of some parameters in terms of any changed testimony, particularly by Officer Torres changing his testimony into the parking lot, because his previous ruling was that if he changed his testimony, then we'd be able to introduce the bill. So I'm fine, I'm fine, I was fine with the stipulation as to the parking lot, but not as to I'm fine in terms of abandoning or withdrawing our objections to the exclusion of the evidence in terms of pursuit. And we believe our case on this issue is similar to Ashcraft and Jarrell v. Cody, where there was a very probative piece of evidence that the court excluded that was central to the issue, and the court did not fully appreciate the value, the probative value of that case. So we would submit pursuit to Ashcraft and Jarrell v. Cody v. Hopkins v. Baker, and we would submit that this case is substantially different than English that the appellees are relying on, because the evidence that we were seeking to introduce was precisely to cover the void where there was conflict, because exactly what happened was we were concerned that the appellees would be able to argue that, without that evidence, that during the pursuit of Mr. Berskow, once he left the complex, that it was a gun rather than a cell phone. And we would submit that our situation is very similar to the case aside. I'd like to reserve my last 38 seconds of my four minutes for rebuttal. I can't speak for the presiding judge, but you may be able to get some time regardless for rebuttal. But given the standard of review on an evidentiary ruling, I mean, we don't sit and say, well, what we would have done if we had been the trial judge. It's an abuse of discretion standard that we have. So how is this an abuse of discretion? We would submit to the court that this is abuse of discretion because it's not harmless. And we believe we satisfied three factors that show that substantial rights were violated, that it was a very close call. This issue in terms of the introduction of the cell phone bill was a central issue in the case for the jury to resolve, whether or not he had the BB gun in his hand or whether he had the cell phone. And we would submit that the court's efforts to mitigate not admitting that evidence was deficient because it did not address the central issue concerning the issue that we were presenting evidence on, whether he had a cell phone or the gun in his hand during the pursuit. So accordingly, we believe that we've satisfied the standard to show that it was not harmless. Okay. Thank you. We'll give you a bit of time for rebuttal. All right. Thank you so much. Good morning. May it please the Court, Carl Schifferle for the District of Columbia and Officer Leo. I have three overarching points on the phone bill issue. First, that issue was forfeited because of the acquiescence of plaintiff's counsel in the trial court's resolution of the issue. Second, in any event, there was no abuse of discretion given the cumulative nature of that bill and its limited probative value that would have required a jury to speculate about how to use it. And then third, even if there were error, it was not prejudicial in light of all the other direct evidence in the case bearing on the issue, again, combined with the limited probative value of the bill at best. With regard to my first point, the pretrial conference is where the trial court resolves the issue, and that's where the focus should be in terms of how the court dealt with it and the acquiescence of plaintiff's counsel. The court specifically asked Mr. Pons, in light of the stipulation by the defendants, what does it matter with regard to the bill? And this is at Joint Appendix 285. The response was to corroborate the testimony of the two witnesses who said that Mr. Briscoe had a cell phone when he was first encountered by the police. That carries over onto Joint Appendix 286. That was the only purpose specified for why the plaintiff wanted this bill to be introduced. And in light of the stipulation of the defendants that they would not contest that fact, again, that Mr. Briscoe was on a cell phone in his hand to his ear when first encountered by the police, that there would be no probative value to the bill. It would be purely cumulative. But at 286, what counsel said is that perhaps Officer Torres was wrong and that, in fact, what Mr. Briscoe had was a gun in his hand at some point. I mean, counsel never restricted this to say that the probative value was only to show that there was a phone in his hand at the beginning of the encounter. We submit that is not clear from that. The two witnesses that are referenced, Officer Torres and Ms. Inman, were the two witnesses who would say and did, in fact, testify that Mr. Briscoe had a gun in his hand when first encountered by the officers. Neither of those two witnesses testified that Mr. Briscoe had a phone in his hand when he was fleeing from the police. Ms. Inman said he had nothing in his hand. Officer Torres said he had a gun in his hand. So the testimony of those two witnesses, the corroboration is not as to the flight, it's to as the initial encounter. And in light of the defendant's stipulation as to the fact that Mr. Briscoe had a phone in his hand at the time of the initial encounter, the court was clearly correct to say that it was purely cumulative. You're saying that there was a stipulation. What did the stipulation say? The stipulation would be reflected in the course of the resolution of this issue in the pretrial conference. It would be in effect that the defendants will not contest that Mr. Briscoe had a cell phone in his hand when first encountered by the officers. And the trial court understandably believed that this had resolved the issue. The stipulation was a benefit to the plaintiff. Did Officer Torres testify as to what he saw in Briscoe's hand at the beginning of the encounter? Yes, that Mr. Briscoe had a cell phone at the beginning of the encounter. When Mr. Briscoe was later fleeing, he did have a gun, according to Officer Torres. That is, he pulled a gun. During the course of flight, he pulled a gun out of his waistband or that he was clutching at his waistband and then eventually saw the gun in Mr. Briscoe's hand. But the trial court understood reasonably that it had resolved the issue satisfactorily to both sides. The plaintiff had gotten the benefit of the defendant's stipulation. The plaintiff's counsel said, we're fine, we're fine, indicating agreement with that resolution. It certainly didn't put the court on notice that there was something else that maybe the court needed to reconsider or resolve, that there was some continuing objection. And there was nothing that plaintiff's counsel said afterwards, after saying, we're fine, we're fine, that would have indicated to the trial court or to the defendants that there was a continuing objection. This is an important issue because what the plaintiff is asking for is to set aside this entire trial, a very lengthy trial, go through all these appellate proceedings, and then have a whole new trial again, simply because when this could have been easily avoided, if plaintiff's counsel had simply made clear on the record that the objection, the nature of the objection that they're making now, that was not made clear at the pretrial conference when the court issued its ruling. So there's an important reason why it is a burden on the party who's seeking to make it an appellate issue to have adequately alerted the court below. So can I ask you this? So a little bit further down the page on 286, after counsel says at some point that Mr. Briscoe had was a gun in his hand at some point, as Judge Wilkins pointed out, then the court says on lines 14 through 16, if one of their officers say that that wasn't a phone in contrast to his prior testimony, it was actually a gun, that would open the door. So at that point, then the court is understanding the issue about whether it was either a gun or a phone in his hand. And I take it what the court is saying there is still targeted towards the initial moments of the encounter and is saying if somebody wants to contest the proposition that it was actually a phone, I mean it was actually a gun rather than a phone, then that could open the door to allow the evidence in, because at that point there would be a debate about it. But I, being the court, am assuming that there's not any dispute about that, that actually the only testimony is that in fact it was a phone. Is that the way you understand that? Because at least at this point on lines 14 to 16, the court is noting the difference between having a phone in hand as opposed to having a gun in hand. Correct. But that's only going as to those two witnesses and their testimony. And their testimony is about the initial encounter. It's about the initial encounter. And I want to just focus on that particular page of the transcript, too. There's further discussion in the entire context leading up to the court's ruling. It's clear that we're talking about the initial encounter. Right. I just want to make sure that even though the court is talking about the difference between having a gun in hand and having a phone in hand, the court is discussing that by reference to the initial encounter because that's all everybody understood the officers would be testifying about. That's correct, Your Honor. It's clear from the entire context. I'm not restricting myself just to those pages. We would point to the court for the entire discussion leading up to the court's ruling. In any event, there was no abuse of discretion given the cumulative nature of the bill in light of the actual witness testimony and other evidence in the case. We did cite the English case as an example of that. Furthermore, the additional ground that Plaintiff's counsel is now seeking to rely upon for the admission of the bill is something that was not articulated to the trial court and was therefore forfeited. It is one thing to say we want this bill to be admitted to corroborate witness testimony that he had a phone when initially encountered, to say we want to admit this bill as direct evidence of what no witness would testify to, and that is he had a cell phone in his hand when he was fleeing. Even if he had preserved that purpose and made that proffer, assuming that there was no forfeiture on that point, it is not evidence, the bill is not evidence, that he actually had a phone in his hand when he was fleeing. As was mentioned previously, it's perfectly consistent that he had the gun in his pocket or somewhere else on his person as in his hand. The bill does not indicate which of those alternatives is any more likely, and so therefore the bill would have no probative value. I mean, I take your point that being on a call is perfectly consistent with the notion that the phone is still not in your hand, that everybody seems to agree with that. But do you disagree with the proposition that it at least is an arrow in the quiver that a phone call is still going in support of somebody who wants to argue that therefore it was a phone rather than a gun in the hand? I mean, you'd rather have that evidence than not have it. It just doesn't add anything. It doesn't make the prior stipulation that he was on the run. Doesn't Rule 401 say evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence? Isn't that what Rule 401 says? Yes, and we think it does not make it any more probable. Any tendency? Right, because it doesn't have any tendency to show that it was in his hand as opposed to being in his pocket or elsewhere on his person, and therefore it wouldn't be relevant. But even assuming it has some marginal probative value, the Court still has discretion under Rule 403 to exclude relevant evidence. It did mention... It's not really your position that it's not relevant. You just seemed to say that it was. Your position is that it's cumulative, Steve, and therefore the Court could exclude it, although it might have marginal relevance. True. I will acknowledge, at least as a back-up position, that if it has some probative value, it would still be cumulative. It would still be within the discretion of the Court to exclude it. The jury would have to speculate, because given the exact... Here, not only within the purview of the Court to exclude, you also have the stipulation and the, I understand, perhaps ambiguous but at least apparent acquiescence of counsel for the defense in the terms of the stipulation as the Court saw it. Yes, Your Honor. For all those points, I do agree. We made the additional point in our brief that, even assuming that we get past all the hurdles that I mentioned before, Plano still didn't make an offer of proof sufficient to show that the bill established he was... at the time of flight. That is, there's simply a bill that has a call initiated at 2.22, minutes used as three. The bill reflects that the times of all the calls and the minutes used for all the calls are minute increments. There are no seconds. So it could well be that, and it's standard practice in the industry, to round up partial minutes to full minutes so the phone call could have only been two minutes and one second in order to align it with the video, the only other time reference in the case. Plano would have had to have shown that the timekeeping system used by the phone company was synchronized with the time on the video. There was no proffer whatsoever of that.  It would remind me of the elapsed time from the beginning of the encounter to essentially the end of the encounter. What is captured on the video, the relevant portion, begins at, according to the time stamp on the video, 2.24 and 18 seconds. That's when Mr. Briscoe first appears in the frame of the video. And the shooting, or Mr. Briscoe, falls about 2.24 and 24 seconds, again, according to the time stamp on the video. But whether that is all synchronized with the timekeeping system that was utilized by the phone company in preparing the bill, again, there was no proffer whatsoever that those were synchronized. Once again, it would invite jury speculation. The court was well within its discretion to exclude it, even if it had minimal profit of value. Would you repeat again just the numbers? Don't give what they are, just the beginning number and the end number. 2.24. Yes, so 2.24 and 18 seconds, I believe. That's when Mr. Briscoe first appeared. Don't put the words in there. Just give me the numbers, please. Sorry, I got it. 2.24 and 24 seconds. 2.24.18 to 2.24.24. Correct. Okay, thank you. And then our final point was even assuming that there was error, that error was a harmless error. The plaintiff, once again, would have the burden of proof of establishing harm. If this court can say with fair assurance the error did not substantially sway the verdict, then this court would affirm. Any probative value was minimal. The direct evidence in the case was far more probative. The jury had all the witness testimony, including police and civilian witnesses who testified as to what they observed. There was the video as well, direct evidence on this issue. And the reason that the plaintiff wanted to introduce this bill went to their theory that the gun was planted, and that was an exceptionally weak theory, we think, borne out by the evidence in the case. It was not supported by the record much at all, and the direct evidence that Mr. Briscoe had a gun was very substantial. And so for those reasons, any error would be harmless, and this court should affirm. Unless there are further questions from the court, I'm happy to submit on the rest of the issues on our brief. Thank you. Thank you. We'll give you back two minutes, Mr. Franz. All right. Thank you so much. This evidence was very crucial, and it was not cumulative, because in looking at the videotape, there's only one object in his hand, and the object is either the BB gun or it's a cell phone. And the evidence was extremely important to the appellant because there was evidence that he had a cell phone when he was in the parking lot. There was no evidence ever testified that he had a gun. When his body is discovered, there is a cell phone and there is the BB gun, and there is no evidence in the videotape that he had both. So if the cell phone is found on the ground next to his body, it could not have been in his pocket, and that's why the evidence concerning the Sprint Bill became extremely paramount for us to be able to fill that void. And the timing of it is also important because the cell phone bill reflects that. It reflects the time period from the initial encounter in the parking lot up until the time he is shot. Beginning at 20... He was shot at 24 minutes and 24 seconds in the tape, and the telephone was engaged during that time. That is why the evidence was so important, and we submit that the trial court, in terms of my representation, that the court articulates my position in terms of why we wanted the cell phone on page 284 of the appendix. My arguments on my submission to the court on page 285 was an extension of those arguments. It was not a change when I said, because they are probably going to come into court and argue, perhaps Officer Torres was wrong and, in fact, Mr. Briscoe had a gun in his hand at some point. And when I was referencing they, I was meaning the District of Columbia, not specific witnesses. So we would submit to the court that the trial court abuses discretion because the trial court failed to properly consider the provative value of the records concerning the pursuit and the time of the shooting and did not make the necessary findings pursuant to Federal Rule 403. My time has almost expired, so if there are no questions in the next few seconds. I think that this is going past time, but thank you very much. Thank you so much. The case is submitted. Thank you.
judges: Srinivasan, Wilkins, Sentelle